## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM WILSON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FOAMIX PHARMACEUTICALS LTD., STANLEY HIRSCH, STANLEY STERN, REX BRIGHT, ANNA KAZANCHYAN, TONY BRUNO, DAVID DOMZALSKI, AARON SCHWARTZ, SHARON BARBARI, MENLO THERAPEUTICS INC., and MENLO MERGER SUB,<br><br>Defendants. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, William Wilson ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1. Plaintiff brings this stockholder class action on behalf of himself and all other public stockholders of Foamix Pharmaceuticals Ltd. ("Foamix" or the "Company"), against Foamix and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), Menlo Therapeutics Inc., and Menlo Merger Sub ("Menlo"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and breaches of fiduciary duty as a result of Defendants' efforts to sell the Company to Menlo Therapeutics Inc. ("Parent"), and Menlo Merger Sub ("Merger Sub," collectively with Parent, "Menlo") as a result of an unfair process for an unfair price, and to enjoin an upcoming stockholder vote on a proposed stock-for-stock transaction equal to 0.5924 shares of Menlo Common Stock or a contingent stock right (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a November 10, 2019, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").  Under the terms of the Merger Agreement, Foamix will become an indirect wholly-owned subsidiary of Menlo, and Foamix stockholders will receive 0.5924 of a share of Menlo common stock and a contingent stock right ("CSR").

3.      Thereafter, on December 4, 2019, Defendants filed a Registration Statement on Form S-4 ("Registration Statement") with the SEC in support of the Proposed Transaction.

4.      Notably, the Proposed Transaction is unfair and undervalued for a number of reasons.  Significantly, the Registration Statement describes an insufficient process in which the only end goal was a sale to the Menlo. Such a sales process, or lack thereof, clearly indicates that the interests of the common stockholders of Foamix was not of overriding concern to the Individual Defendants.

5.      In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell Foamix without first taking steps to ensure that Plaintiff and Class members (defined below) would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or Menlo without regard for Foamix public stockholders.  Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Foamix stockholders.

6.      Next, it appears as though the Individual Defendants have entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits with no thought to the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.     Finally, in violation of sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and their fiduciary duties, Defendants caused to be filed the materially deficient Registration Statement on December 4, 2019 with the SEC in an effort to solicit stockholders to vote their Foamix shares in favor of the Proposed Transaction.  The Registration Statement is materially deficient and deprives Foamix stockholders of the information they need to make an intelligent, informed and rational decision of whether to tender their shares in favor of the Proposed Transaction.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the Company's financial projections; (b) the sales process of the Company; and (b) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinions provided by the Company's financial advisor, Barclay Bank PLC ("Barclays").

8.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

## PARTIES

9.     Plaintiff is a citizen of Texas and, at all times relevant hereto, has been a Foamix stockholder.

10.     Defendant Foamix is a specialty pharmaceutical company in the United States and internationally. The company focused on the development and commercialization of innovative therapies in dermatology. On October 18, 2019, the U.S. Food and Drug Administration ("FDA") approved Foamix's first drug product, AMZEEQ (minocycline) topical foam, 4%, formerly known as FMX101, a once-daily topical antibiotic for the treatment of inflammatory lesions of non-nodular moderate to severe acne vulgaris in patients 9 years of age and older. Foamix is also developing a product candidate, FMX103 (minocycline) topical foam, 1.5%, for the treatment of moderate-to-severe papulopustular rosacea in adults. Foamix is incorporated under the laws of Israel and has its principal U.S. place of business at 520 U.S. Highway 22, Suite 204, Bridgewater,

New Jersey 08807.  Shares of Foamix common stock are traded on the NasdaqGS under the symbol "FOMX."

11.    Defendant Dr. Stanley Hirsch ("Hirsch") has been a Director of the Company at all relevant times.  In addition, Hirsch serves as the Chairman of the Company Board and is a member of the Nominating and Corporate Governance Committee.

12.    Defendant Stanley Stern ("Stern") has been a director of the Company at all relevant times.  In addition, Stern serves as the Company's Chairman of the Audit Committee and a member of the Nominating and Corporate Governance and Compensation Committees.

13.    Defendant Rex Bright ("Bright") has been a director of the Company at all relevant times.  In addition, Stern serves as the Company's Chairman of the Compensation Committee and a member of the Nominating and Corporate Governance and Audit Committees.

14.    Defendant Dr. Anna Kazanchyan ("Kazanchyan") has been a director of the Company at all relevant times. In addition, Kazanchyan serves a member of the Compensation Committee.

15.    Defendant Tony Bruno ("Bruno") has been a director of the Company since November 2018.  In addition, Bruno serves a member of the Compensation Committee.

16.    Defendant David Domzalski ("Domzalski") has been a director of the Company since January 2018.  In addition, Domzalski serves as the Chief Executive Officer ("CEO") of Company.

17.    Defendant Dr. Aaron Schwartz ("Schwartz") has been a director of the Company at all relevant times.

18.    Defendant Sharon Barbari ("Murray") has been a director of the Company since January 2019. In addition, Barbari serves a member of the Audit Committee.

19.    Defendants identified in ¶¶ 11 - 18 are collectively referred to as the "Individual Defendants."

20.    Defendant Menlo is a late-stage biopharmaceutical company in the United States and internationally. The company is focused on the development and commercialization of

serlopitant for the treatment of pruritus, or itch, associated with various conditions such as prurigo nodularis, or PN, psoriasis and chronic pruritus of unknown origin, or CPUO.  Menlo is incorporated under the laws of the State of Delaware and has its principal place of business at 200 Cardinal Way, 2nd Floor, Redwood City, CA 94063.  Shares of Menlo common stock are traded on the NasdaqGS under the symbol "MNLO."

21.     Defendant Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

23.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Menlo has its principal place of business is located in this District, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Foamix common stock who are being and will be harmed by Defendants' actions described herein (the "Class").  The Class specifically excludes

Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

26. This action is properly maintainable as a class action because:

a. The Class is so numerous that joinder of all members is impracticable. According to the most recent 10Q regarding Q3 financial results, as of November 4, 2019, there were over 61 million shares of Foamix common stock outstanding. The actual number of public stockholders of Foamix will be ascertained through discovery;

b. There are questions of law and fact which are common to the Class, including *inter alia*, the following:

    i. Whether Defendants have violated the federal securities laws;

    ii. Whether Defendants made material misrepresentations and/or omitted material facts in the Registration Statement; and

    iii. Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

    f.   Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

    g.   Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

27.    By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Foamix and owe the Company the duties of due care, loyalty, and good faith.

28.    By virtue of their positions as directors and/or officers of Foamix, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Foamix to engage in the practices complained of herein.

29.    Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

    a.   act with the requisite diligence and due care that is reasonable under the circumstances;

    b.   act in the best interest of the company;

    c.   use reasonable means to obtain material information relating to a given action or decision;

    d.   refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

e.  avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

f.  disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

30.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Foamix, are obligated to refrain from:

a.      participating in any transaction where the directors' or officers' loyalties are divided;

b.      participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

c.      unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

31.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Foamix, Plaintiff and the other public stockholders of Foamix, including their duties of loyalty, good faith, and due care.

32.     As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Foamix common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

### Company Background

33.     Foamix provides pharmaceutical advancements primarily in dermatology in the United States and internationally.

34.     The Company's portfolio comprises AMZEEQ (minocycline) topical foam, a once-daily topical antibiotic for the treatment of inflammatory lesions of non-nodular moderate to severe acne vulgaris in patients 9 years of age and older. Foamix is also developing a product candidate, FMX103 (minocycline) topical foam, 1.5%, for the treatment of moderate-to-severe papulopustular rosacea in adults.

35.     Foamix has developed a platform, Molecule Stabilizing Technology ("MST") to help analyze and reengineer topical innovation. Both the AMZEEQ and FMX103 products were developed using the MST platform.

36.     The Company does not have any products available for purchase at this time. In October 2019, Company received FDA approval for their AMZEEQ product and subsequently entered into a manufacturing and supply agreements with ASM Aerosol-Service AG.

37.     The Company's recent financial performance indicated no revenue from the sales of any of their products. In their September 30, 2019 press release announcing its Q3 financial results, Company mentioned that they are currently engaged in pre-launch sales and marketing planning activities and other pre-commercialization efforts in order to support the commercialization of AMZEEQ in the United States.  Regarding the future of the Company, the press release noted that, "We anticipate that with our existing cash and investments, along with funds that we may be entitled to receive under the Credit Agreement and our 2020 estimated revenues, will be able to fund our planned operating expenses and capital expenditure requirements into the first quarter of 2021."

38.     On September 4, 2019, Foamix announced that the U.S. Patent and Trademark Office issued U.S. Patent No. 10,398,641, covering a method related to the use and topical administration of certain minocycline formulations once-daily for at least seven consecutive days for the treatment of acne vulgaris within middle adolescence.  This newly issued patent, which expires in September 2037, is the latest U.S. patent to be issued to the Company in connection with their drug development programs, and provides additional coverage for AMZEEQ.

39.     Speaking on the positive outlook, CEO Defendant Domzalski stated in the Company's Q2 Press Release on August 7, 2019, "Combined with our current cash position, we believe these investments, along with the future access to capital which these transactions provide, will allow us to fund the commercial launches of FMX101 and FMX103, pending FDA approval of these products."

40.     Based upon the positive outlook and emphasis on research and investment in their products recently, the Company is likely to have tremendous future success and should command a much higher consideration than the diluted amount contained within the Proposed Transaction.

41.     Despite this upward trajectory, the Individual Defendants have caused Foamix to enter into the Proposed Transaction for insufficient consideration.

***The Proposed Transaction***

42.     On November 11, 2019, Menlo and Foamix issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

REHOVOT, Israel and BRIDGEWATER,       N.J. and REDWOOD       CITY, Calif., Nov.   11,   2019 (GLOBE   NEWSWIRE)  -- Foamix   Pharmaceuticals Ltd. (Nasdaq: FOMX ) ("Foamix") and Menlo Therapeutics Inc. (Nasdaq: MNLO) ("Menlo") today announced that they have signed a definitive merger agreement to create a combined biopharmaceutical company focused on the commercialization and development of therapeutics to serve patients in the dermatology space.  The Boards of Directors of both Foamix and Menlo have unanimously approved the transaction.

The combined company will have a diversified portfolio including an approved product   and   three   late-stage   product   candidates   focused   on   dermatologic indications.

Foamix recently received FDA approval for AMZEEQ$^{TM}$ (minocycline) topical foam, 4%, for the treatment of inflammatory lesions of non-nodular moderate-to-severe acne vulgaris in adults and pediatric patients 9 years of age and older. AMZEEQ$^{TM}$ is the first topical formulation of minocycline. Foamix is finalizing the implementation of the commercial infrastructure in preparation for a U.S. commercial launch anticipated in January 2020.

Foamix recently submitted a New Drug Application to the U.S. Food and Drug Administration (FDA) for FMX103 (minocycline) topical foam, for the treatment of moderate-to-severe papulopustular rosacea. The FDA set a Prescription Drug User Fee Act action date of June 2nd, 2020.  If approved, FMX103 would be the first minocycline product available for rosacea patients. Foamix is also conducting a Phase II trial for FCD105, a topical combination foam of minocycline and adapalene, currently being evaluated for the treatment of moderate-to-severe acne vulgaris.

Menlo's lead late stage product candidate, serlopitant, is being developed as a novel treatment for pruritus (itch).  Two Phase III clinical trials of serlopitant for the treatment of pruritus associated with prurigo nodularis ("PN") are fully enrolled, with results expected in March or April 2020.  Serlopitant has received Breakthrough Therapy Designation by the FDA for the treatment of pruritus associated with PN and has the potential to be the first approved therapy for this indication.  Serlopitant is also being evaluated for chronic pruritus of unknown origin ("CPUO"), currently in Phase II clinical trials, and for pruritus associated with psoriasis, which had positive Phase II data.

The combined company has a compelling product portfolio and late-stage pipeline.  There are multiple near-term milestones:

- Commercial launch of AMZEEQ$^{TM}$ anticipated in January 2020

- Phase II clinical trial results for serlopitant for the treatment of CPUO in January or February 2020

- Phase III clinical trial results in the U.S. and Europe for serlopitant for the treatment of pruritus in PN in March or April 2020

- FMX103 PDUFA action date of June 2, 2020

- Phase II clinical trial results for FCD105 for treatment of moderate to severe acne with top-line data expected in mid-2020

- NDA submission, assuming Phase III success for serlopitant for the treatment of pruritus in PN, in H2 2020

**Rationale for the Transaction**

The rationale for this transaction is to create value for the combined shareholders of Foamix and Menlo that can be more advantageous together than separately through several synergies:

- Commercial leverage: Foamix's dermatology sales and marketing organization can more effectively launch Menlo's near-term potential breakthrough product for pruritus associated with PN

- Cost savings: by utilizing Foamix's commercial organization and G&A infrastructure, the companies could save approximately $50 million per year versus the stand-alone estimated duplicate organization costs in future years

- Reduced financing need: the combined cash from the companies provides runway through H1 2021

- Creates a leading dermatology company with multiple products

**Transaction Details**

The transaction is structured as a stock-for-stock exchange, enabling the Foamix and Menlo shareholders to share in the upside advantages of combining the companies.  Recognizing the near term data coming from Menlo's Phase III trials in PN, the transaction accounts for the data outcomes by providing a premium to Menlo in the event that both trials are successful, while creating a mechanism to provide more shares to Foamix shareholders to provide downside adjustment if one or both PN trials do not hit their primary endpoint.

Under the terms of the merger agreement, each share of Foamix stock will be exchanged for 0.5924 of a share of Menlo common stock and a contingent stock right ("CSR").  The exchange ratio (prior to any adjustment through the CSR) implies a 18% premium to Menlo shareholders based upon the 10-day average volume weighted trading price for each company.  Foamix shareholders will own approximately 59% of the combined company and Menlo shareholders will own approximately 41% on a pro forma, fully diluted basis, giving effect to all dilutive stock options at the time of announcement, units and warrants but without taking into account any adjustment to the exchange ratio or through the CSR.  The exchange ratio or CSR may result in the delivery of additional shares of Menlo common stock to Foamix shareholders dependent upon the Phase III trial results for serlopitant for the treatment of pruritus in PN.  There are certain adjustments to the ownership levels for each company's shareholders as follows that result from an adjustment to the exchange ratio under the Merger Agreement prior to closing or post-closing through the issuance of CSRs to Foamix shareholders:

- If one of the Phase III PN trials fails to meet its primary endpoint at or before May 31, 2020, Foamix shareholders will receive an additional 0.6815 of a share of Menlo common stock for each Foamix share, increasing pro forma ownership of the combined company by Foamix shareholders to 76%

- If both Phase III PN trials fail to meet their primary endpoints at or before May 31, 2020, Foamix shareholders will receive 1.2082 additional Menlo shares for each Foamix share, increasing pro forma ownership of the combined company by Foamix shareholders to 82%

- If both the Phase III PN trials are successful with results announced by May 31, 2020, then no additional Menlo shares will be issued to Foamix shareholders and pro forma ownership by Foamix shareholders will remain 59%

- In the event that the results of the Phase III PN trials are received prior to closing (or if the results of neither trial has been announced by May 31, 2020 and the closing occurs thereafter), then the exchange ratio will be amended based on the clinical trial results and no CSRs will be issued.

The adjustments to ownership levels were designed with the intent of providing protection to Foamix shareholders in the event that either of these important serlopitant clinical trials were not successful.  To the extent the CSRs are issued, they will not be registered or separately tradeable, and there will be restrictions on their transfer.

The combined company will be led by David Domzalski, CEO of Foamix and headquartered in New Jersey.   The board of the combined company will consist of five members designated by Foamix (including Mr. Domzalski) and two members designated by Menlo (including Steve Basta, its CEO).

The transaction is subject to approval of the merger by Foamix shareholders, approval of the share issuance to Foamix shareholders by Menlo stockholders, as well as regulatory approvals and satisfaction of other customary closing conditions.  Certain significant shareholders of Foamix and Menlo, together with the CEOs of both companies, have entered into agreements, whereby they have agreed to vote the shares they hold at the time of the shareholder meeting in favor of the merger and/or share issuance (subject to limited exceptions). The transaction is expected to be completed in late Q1/early Q2 of 2020.

**Combination Creates a Differentiated Dermatology-Focused Company**

The combination of the two companies is expected to capitalize on the collective skills sets, internal expertise and combined assets to create a comprehensive and more scaled biopharmaceutical company focused on dermatology. Foamix's mission is to improve the lives of patients by developing and commercializing proprietary, innovative and differentiated drugs in dermatology, and plans to leverage its infrastructure to efficiently commercialize a portfolio of products while continuing to develop new therapies.

Foamix is currently developing the commercial infrastructure to support the upcoming U.S. commercial launch of AMZEEQ$^{TM}$ anticipated in January 2020. The initial launch intends to focus on 6,000 high-prescribing dermatologists. The commercialization plans for FMX103 and serlopitant for pruritus associated with PN, if approved, will utilize the established sales force and commercial infrastructure for AMZEEQ$^{TM}$ requiring minimal additional investment.

David Domzalski, Foamix Chief Executive Officer, said: "The combination of Menlo with Foamix accelerates our progression in becoming a leading dermatology-focused company with several late-stage assets that can leverage the commercialization infrastructure we are building to support the launch of

CLASS ACTION COMPLAINT

AMZEEQ™. Serlopitant for pruritus associated with PN represents a breakthrough therapy for a dermatologic condition with no currently approved treatment options. Further, Foamix's drug development platform will continue to bring novel dermatology product candidates into the clinic, including FCD105, which recently began enrollment in its Phase II trial. The combined company will look to continue developing products that will leverage the existing infrastructure.  We are excited about the momentum our company has now, and want to thank our employees and partners for their hard work and deep commitment as we enter this next phase."

Steve Basta, Menlo Chief Executive Officer, said: "Our goal with this merger is to maximize value by developing and commercializing our assets in the context of a broader dermatology franchise. A combination with Foamix will help de-risk and accelerate serlopitant's commercial launch, assuming approval. The Foamix management team also brings extensive R&D and commercial expertise, having developed two novel topical therapies for acne and rosacea at Foamix, and also in leading the successful commercial launches of several dermatology products prior to Foamix.  We are excited about what these two companies can accomplish together."

The combined company is expected to have sufficient cash to support its operational plans through the first half of 2021.

Barclays acted as exclusive financial advisor to Foamix. Skadden, Arps, Slate, Meagher & Flom, LLP and Meitar, Liquornik, Geva, Leeshem and Tal acted as Foamix's legal counsel in connection with the transaction. Guggenheim Securities, LLC acted as exclusive financial advisor to Menlo. Latham & Watkins LLP and Herzog, Fox & Neeman acted as Menlo's legal counsel in connection with the transaction.

### The Inadequate Merger Consideration

43.     Significantly, the Company's financial prospects, opportunities for future growth, and synergies with Menlo establish the inadequacy of the merger consideration.

44.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately take into consideration how the Company is performing, considering key financial improvements of the Company in recent years.

45.     Significantly, Menlo's stock price has dropped markedly since the announcement, from $5.22 to $4.36 on December 13, 2019. As a result, the exchange ratio that drives the valuation has caused an over 15% drop in the value of the Proposed Transaction, with Foamix stockholders

to receive only $2.58 per share if the deal had closed as of December 13, 2019. The day before the Proposed Transaction was announced, Foamix shares closed at $4.34. Even as of the date of the announcement, Foamix shares closed at $3.48, significantly above the $2.79 it closed at on December 13, 2019 – all driven by the dropping valuation of Menlo.

46.     Moreover, the Proposed Transaction represents a significant synergistic benefit to Menlo, particularly in the dermatology pharmaceuticals arena. Reza Ganjavi, a successful finance professional, mentioned on his blog regarding the merger that the synergistic value of the deal is highlighted by the sales force, launch infrastructure, and Foamix CEO David Domzalski. Ganjavi added that the combination of Foamix and Menlo is stronger together than each company on their own. Menlo's CEO, Steve Basta, noted in their press release announcing the merger on November 11, 2019, that "Our goal with this merger is to maximize value by developing and commercializing our assets in the context of a broader dermatology franchise. A combination with Foamix will help de-risk and accelerate serlopitant's commercial launch, assuming approval. The Foamix management team also brings extensive R&D and commercial expertise, having developed two novel topical therapies for acne and rosacea at Foamix, and also in leading the successful commercial launches of several dermatology products prior to Foamix."

47.     As a result, Menlo and Foamix's similar investment and portfolio products and experienced board members, exemplify the significant synergistic benefits to Menlo and further raise the stakes as to why Menlo did not pay more for the Company. Clearly, while the deal will be beneficial to Menlo, it comes at great expense to Plaintiff and other public stockholders of the Company.

48.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Menlo at the expense of Foamix stockholders, which clearly indicates that Foamix stockholders were not an overriding concern in the formation of the Proposed Transaction.

*Preclusive Deal Mechanisms*

49.     The Merger Agreement contains certain provisions that unduly benefit Menlo by making an alternative transaction either prohibitively expensive or otherwise impossible. Significantly, the Merger Agreement contains a termination fee provision that is especially onerous and impermissible.  Notably, in the event of termination, the merger agreement requires either Foamix to pay up to $3,700,000, if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, each must pay this termination fee even if it consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

50.     The Merger Agreement also contains a "No Solicitation" provision that restricts Foamix from considering alternative acquisition proposals by, *inter alia*, constraining Foamix ability to solicit or communicate with potential acquirers or consider their proposals.  Specifically, the provision prohibits either Foamix from directly or indirectly soliBarclaysng, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide *"Acquisition Proposal"* if it constitutes or is reasonably calculated to lead to a "*Superior Proposal*" as defined in the Merger Agreement.

51.     Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide Menlo information in order to match any other offer, thus providing the other access to the unsolicited bidder's financial information and giving the other the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Menlo.

52.     These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and

pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders.

53.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

54.     The breakdown of the benefits of the deal indicate that Foamix insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Foamix.

55.     Certain insiders stand to receive massive financial benefits as a result of the Proposed Transaction.  Notably, Company insiders, including the Individual Defendants, currently own large, illiquid portions of Company stock that will be exchanged for large cash pay days upon the consummation of the Proposed Transaction.

56.     Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company option or equity award, will be canceled and converted into the right to receive certain consideration according to the merger agreement.

57.     Moreover, certain employment agreements with certain Foamix executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them hundreds of thousands of dollars, compensation not shared by Foamix's common stockholders.

58.     These payouts will be paid to Foamix insiders, as a consequence of the Proposed Transaction's consummation, as follows:

| Name[2] | Cash[3] | Equity[4] | Perquisites / Benefits[5] | Tax Reimbursement[6] | Total[7] |
|---|---|---|---|---|---|
| David Domzalski Chief Executive Officer | $560,000 | $313,749 | $ 70,015 | $ — | $943,764 |
| Ilan Hadar Chief Financial Officer and Israel Country Manager | $333,528 | $ — | $ 75,691 | $ 26,573 | $435,792 |
| Mutya Harsch General Counsel and Chief Legal Officer | $169,372 | $ — | $ — | $ — | $169,372 |

59.     Thus, while the Proposed Transaction is not in the best interests of Foamix stockholders, it will produce lucrative benefits for the Company's officers and directors.

### The Materially Misleading and/or Incomplete Registration Statement

60.     On December 4, 2019, the Defendants caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation their fiduciary duties, failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

61.     Specifically, the Registration Statement fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a.     The nature of any differences that exist between the various non-disclosure agreements entered into between Foamix and any interested third parties

b.     Why the committee of independent board members that was created to run the sales process was not given the authority to approve or deny proposed strategic alternatives.

*Omissions and/or Material Misrepresentations Concerning Foamix's Financial Projections*

62.     The Registration Statement fails to provide material information concerning financial projections provided by Foamix's management and relied upon by Barclays in its financial analyses.   The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

63.     The Registration Statement indicates that in connection with the rendering of Barclays's fairness opinion, Barclays "reviewed and analyzed financial and operating information with respect to the business, operations and prospects of Foamix furnished to Barclays by Foamix, including financial projections prepared by Foamix's management," as well as "reviewed and analyzed financial and operating information with respect to the business, operations and prospects of Menlo furnished to Barclays by Foamix, including financial projections of Menlo prepared by the management of Foamix which reflect alternative scenarios regarding the possible results of the Phase III PN Trials (as such term is defined in the draft merger agreement) including the potential of such Phase III PN Trials (as such term is defined in the draft merger agreement) showing Serlopitant Significance (as such term is defined in the draft merger agreement, with such alternative scenarios, the "Alternative Scenarios")."

64.     Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that Foamix management provided to the Board and Barclays. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

65.     Notably, the Registration Statement fails to provide material information concerning the financial projections prepared by Foamix management, including the specific items as follows.

66.     The Registration Statement fails to provide two sets of projections referenced in the Registration Statement – the "Foamix May Forecast" and the "Foamix August Forecast," which the Board and Barclays received, as well as Menlo and its financial advisor.

67.     Next, with respect to Foamix, the Registration Statement fails to disclose for all Projections (including the "Foamix August Probability-Adjusted Forecast"), the line items necessary to calculate the following Non-GAAP metrics: EBIT and Unlevered Free Cash Flow ("UFCF").  Additionally, the Registration Statement fails to provide a reconciliation of the Non-GAAP measures to the most comparable GAAP measures.

68.     Similarly, with respect to Menlo, the Registration Statement fails to disclose for all Projections, the line items necessary to calculate the following Non-GAAP metrics: EBIT and UFCF.  Additionally, the Registration Statement fails to provide a reconciliation of the Non-GAAP measures to the most comparable GAAP measures.

69.     Finally, with respect to Menlo's Pro Forma Analysis, the Registration Statement fails to disclose for all Projections, the line items necessary to calculate the following Non-GAAP metrics: EBIT and UFCF.  Additionally, the Registration Statement fails to provide a reconciliation of the Non-GAAP measures to the most comparable GAAP measures.

70.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

71.     Without accurate projection data presented in the Registration Statement, Plaintiff and other stockholders of Foamix are unable to properly evaluate the Company's true worth, the accuracy of Barclays's financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Barclays*

72.     In the Registration Statement, Barclays describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

73.     With respect to the Discounted Cash Flow Analysis - Foamix, the Registration Statement fails to disclose the following:

(a)     The specific inputs and assumptions used to calculate the individual inputs and assumptions underlying the range of after-tax discount rates of 12.0% to 14.0%;

(b)     The line items used to calculate Foamix's projected after tax probability adjusted unlevered free cash flows for fiscal years 2020 through 2024;

(c)     Barclays' basis for selecting a range of perpetuity growth rates of 1.0% to 3.0% for Foamix after December 31, 2024; and

(d)     Foamix's terminal value.

74.     With respect to the Discounted Cash Flow Analysis – Menlo Phase III PN Trials "Full Success," the Registration Statement fails to disclose the following:

(a)     The specific inputs and assumptions used to calculate the individual inputs and assumptions underlying the range of after-tax discount rates of 12.0% to 14.0%;

(b)     The line items used to calculate Foamix's projected after-tax probability adjusted unlevered free cash flows for fiscal years 2020 through 2035;

(c)     Barclays' basis for selecting a range of perpetuity growth rates of -10.0% to 0.0% for Menlo after December 31, 2035; and

(d)     Menlo's terminal value.

75.     With respect to the Discounted Cash Flow Analysis – Menlo Phase III PN Trials "Partial Success," the Registration Statement fails to disclose the following:

(a)     The specific inputs and assumptions used to calculate the individual inputs and assumptions underlying the range of after-tax discount rates of 12.0% to 14.0%;

(b) The line items used to calculate Foamix's projected after-tax probability adjusted unlevered free cash flows for fiscal years 2020 through 2035;

(c) Barclays' basis for selecting a range of perpetuity growth rates of -10.0% to 0.0% for Menlo after December 31, 2035; and

(d) Menlo's terminal value.

76. The Registration Statement discloses that Barclays has performed work for Foamix in the past 2 years, but fails to disclose the amount it was compensated for such work.

77. These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

78. Without the omitted information identified above, Foamix's public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests. Moreover, without the key financial information and related disclosures, Foamix's public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests. As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Stockholders.

**FIRST COUNT**

**Claim for Breach of Fiduciary Duties**

**(Against the Individual Defendants)**

79. Plaintiff repeats all previous allegations as if set forth in full herein.

80. The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff and the Company's public stockholders.

81. By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Foamix.

82. As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of Foamix by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Foamix to its public stockholders.

83. Indeed, Defendants have accepted an offer to sell Foamix at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

84. Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

85. The Individual Defendants dominate and control the business and corporate affairs of Foamix, and are in possession of private corporate information concerning Foamix's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of Foamix which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

86. By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

87. As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Foamix's assets and have been and will be prevented from obtaining a fair price for their common stock.

88. Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

89.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

### Aiding and Abetting the Board's Breaches of Fiduciary Duty

### <u>Against Defendants Menlo and Merger Sub</u>

90.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

91.     Defendant Menlo, knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Acquisition, which, without such aid, would not have occurred.

92.     As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares.

93.     Plaintiff and the members of the Class have no adequate remedy at law.

## THIRD COUNT

### Violations of Section 14(a) of the Exchange Act

### <u>(Against All Defendants)</u>

94.     Plaintiff repeats all previous allegations as if set forth in full herein.

95.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders to vote their shares in favor of the Proposed Transaction.

96.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the

public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

97.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following: No solicitation subject to this regulation shall be made by means of any Registration Statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

98.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

99.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

100.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

101.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of its entitlement to decide whether to vote its shares in favor of the Proposed Transaction on the basis of complete information

if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**FOURTH COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against All Individual Defendants)**

102.    Plaintiff repeats all previous allegations as if set forth in full herein.

103.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Company stockholders.

104.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

105.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Foamix's business, the information contained in its filings with the SEC, and its

public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

106.    The Individual Defendants acted as controlling persons of Foamix within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Foamix to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Foamix and all of its employees.  As alleged above, Foamix is a primary violator of Section 14 of the Exchange Act and SEC Rule Registration Statement.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in its favor and in favor of the Class, and against the Defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.    Enjoining the Proposed Transaction;

C.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.    Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Foamix and obtain a transaction which is in the best interests of Foamix and its

stockholders;

F.      Directing defendants to account to Plaintiff and the Class for damages sustained

because of the wrongs complained of herein;

G.      Awarding Plaintiff, the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

H.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: December 18, 2019          **BRODSKY & SMITH, LLC**

                                  By: _____
                                      Evan J. Smith
                                      esmith@brodskysmith.com
                                      Marc L. Ackerman
                                      mackerman@brodskysmith.com
                                      1040 Kings Highway N., Suite 650
                                      Cherry Hill, NJ 08034
                                      T: (856) 795-7250
                                      F: (856) 795-1799

                                      *Attorneys for Plaintiff*